UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORTHEAST TRADING, INC.,

                Plaintiff,

- against -

VEN-CO PRODUCE, INC., ROBERT
VENUTI and ANGELA VENUTI,

                Defendants.

ECF CASE

09 Civ. 7767 (PGG)

**MEMORANDUM**
**OPINION & ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        This is an action for breach of contract and for enforcement of the statutory trust provisions set forth in the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499 ("PACA"). Plaintiff Northeast Trading, Inc. is a wholesale produce dealer that sold and delivered fresh fruits and vegetables to Defendant Ven-Co Produce, Inc., a corporation also engaged in the wholesale produce business. Northeast has moved for summary judgment against Ven-Co and Robert and Angela Venuti, the sole officers and directors of Ven-Co, contending that under PACA all three defendants are liable for non-payment on goods Northeast delivered to Ven-Co. Northeast also seeks pre- judgment interest and attorney's fees.

        For the reasons stated below, Plaintiff's motion for summary judgment will be granted.

## BACKGROUND

        Northeast is a New Jersey corporation with its principal place of business in Kenilworth, New Jersey. Ven-Co is a New York corporation with its principal place of business in the New York City Terminal Market, Bronx, New York. (Cmplt. ¶¶ 2, 3) Both Northeast and

Ven-Co hold licenses and operate under PACA.[1] (Pltf. R. 56.1 Stmt. ¶ 1) Defendants Robert Venuti and Angela Venuti are the sole principals of Ven-Co. (Id. ¶ 2)

Between May 2009 and July 2009 Northeast delivered to Ven-Co, in thirty-seven separate transactions, fresh fruits and vegetables worth more than $327,000. The produce was received in interstate commerce. (Id. ¶ 3) Northeast invoiced Ven-Co for its shipments, and included on each invoice notice that the goods provided were sold subject to the statutory trust authorized by PACA, 7 U.S.C. § 499(e)(c). The invoices also gave notice that, in the event of non-payment, interest would accrue at an annual rate of 18% and that – in the event "overdue accounts are referred to an attorney" – the buyer "agree[d] to pay [the seller's] reasonable attorney's fees plus the cost of all legal action." (Id. ¶ 7, Cmplt., Ex. A) In September 2009, after Ven-Co failed to pay in full for these deliveries, Northeast filed this lawsuit. (Silverstein Decl. ¶¶ 2-3) Northeast and Ven-Co then began discussions to settle accounts, and by April 2010 the parties had agreed upon the amounts due under the remaining invoices. (Id. ¶ 6) Defendants issued checks to Plaintiff in connection with two of the open invoices, but the checks were returned for insufficient funds. (Id.) Northeast alleges that Ven-Co owes $49,010, exclusive of interest, on four invoiced shipments. (Id. ¶ 7) Ven-Co – now defunct – disputes the amount currently owed but does not dispute that it failed to pay Northeast in full for the merchandise provided. (Def. R. 56.1 Resp. ¶ 4; Pltf. R. 56.1 Stmt. ¶ 8)

---

[1] To the extent that this Court relies on facts drawn from Plaintiff's Rule 56.1 statement, it does so because Defendants have either not disputed those facts or have not done so with citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)).

## DISCUSSION

I.  **LEGAL STANDARD**

Summary judgment is warranted when the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). "'[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.'" Lesavoy v. Lane, No. 02 Civ. 10162, 2008 WL 2704393, at *7 (S.D.N.Y. July 10, 2008) (quoting Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

## II.   NORTHEAST HAS NOT WAIVED ITS PACA TRUST RIGHTS

PACA was enacted in 1930 to regulate the interstate sale of perishable agricultural commodities.  Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007).  The statute protects growers and sellers of these goods from "the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." Id. (quoting D.M. Rothman & Co. v. Korea Commercial Bank of N.Y., 411 F.3d 90, 93 (2d Cir. 2005).  Under PACA, "perishable commodities or proceeds from the sale of those commodities are held in trust by the buyer for the benefit of the unpaid seller until full payment is made." Coosemans, 485 F.3d at 705.

PACA makes it unlawful

> [f]or any commission merchant, dealer, or broker to . . . fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction; or to fail to maintain the trust as required under section 499e(c) of this title.

7 U.S.C. § 499b(4).

In addition, the statute provides that

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, . . . and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

A PACA dealer is a person or corporation "engaged in the business of buying or selling in whole or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce."  7 U.S.C. § 499a(b)(6).  PACA requires that a

person or corporation have a "valid and effective" license when they engage in "the business of a commission merchant, dealer, or broker." 7 USC § 499c(a). In addition, a seller of perishable commodities is not "entitled to PACA protection for any non-payment claims unless it perfects its claims." Id.; see also Courchesne Larose, Ltee. v. Ven-Co Produce, Inc., No. 10 Civ. 3123(SHS), 2010 WL 4877828, at *1 (S.D.N.Y. Nov 30, 2010). One way for a merchant to perfect its claims is to include language relating to the preservation of the trust in its "ordinary and usual billing or invoice statements." 7 U.S.C. § 499e(c)(4); see also A & J Produce Corp. v. Chang, 385 F.Supp.2d 354, 361 (S.D.N.Y.2005).

It is undisputed that both Northeast and Ven-Co held licenses under PACA, that Northeast delivered through interstate commerce perishable agricultural commodities to Ven-Co, and that Northeast included language in its invoices to preserve its rights under PACA. (Pltf. R. 56.1 Stmt. ¶¶ 3,7) There is also no dispute that Ven-Co has not paid for all shipments of wholesale produce delivered to it by Northeast.[2] (Id. ¶ 8) Northeast therefore argues that it is entitled to summary judgment on its claims.

Defendants argue that Northeast waived its right to assert PACA's trust provisions by engaging in a "post-default workout plan" with Ven-Co. (Venuti Aff. ¶ 4) Relying on American Banana Co., Inc. v. Republic National Bank of New York, 362 F.3d 33 (2d Cir. 2004), Defendants argue that Northeast waived its right to assert PACA trust protections when it agreed – after this lawsuit was filed and served – to extend Ven-Co's time to repay overdue invoices beyond thirty days.

In American Banana, sellers of produce sought to hold the bank that serviced the

---

[2]  The parties disagree about the amount that is outstanding. Northeast alleges that $49,010 remains unpaid (Silverstein Decl. ¶ 4), while Ven-Co claims that the unpaid amount is $35,086. (Venuti Aff., Ex. A)

defaulting buyer's checking account liable for breach of the PACA trust.  In that case, the sellers had agreed "to forbear from enforcing their trust rights" to allow the defaulting buyer to remain in business.  American Banana, 362 F.3d at 39.  The sellers pursued their claims against the third-party bank in district court after they were unsuccessful in obtaining a full recovery from the defaulting buyer.  Id. at 40.  The District Court determined that the Sellers' post-default agreement with the produce dealer did not render the sellers ineligible to recover under PACA.  Id.

On appeal, the Second Circuit reversed, holding that the post-default agreement between the sellers and the produce dealer afforded defendants "a complete defense to PACA liability."  Id. at 42.  The Court ruled that, "[t]o be entitled to [PACA] trust protection, [produce] sellers [a]re required to extend only short-term credit . . . and, in the event of defaults, promptly to pursue administrative and judicial remedies."  Id. at 38 (citations omitted).  The Court noted that "PACA requires buyers to make 'full payment promptly,'" id. at 42 (citing 7 USC § 499b(4)), and that "[s]ellers who offer payment periods of longer than thirty days are not entitled to PACA trust protection."  Id. at 43.  The Court held that, in agreeing to a post-default forbearance plan with the buyer that exceeded thirty days, the Sellers had waived their right to assert PACA trust protection. [3]  Id. at 45, 49.

American Banana does not control here.  In that case, the "[s]ellers agreed to – and, in fact, for a period far in excess of thirty days did – forebear from proceeding with their lawsuit as long as [defendant] made monthly payments."  Id. at 48-49 (emphasis added).  Here,

---

[3]  A new PACA regulation – effective April 13, 2011 – provides that a seller retains its trust rights even if it enters into a post-default agreement or accepts payment for a past due amount.  7 C.F.R. § 46.46(e)(3).  Because the new regulation post-dates the events in this case, this Court will apply the law as it existed prior to April 2011.  See C.H. Robinson Worldwide, Inc., v. Auster Acquistions, LLC, No. 11-C-105, 2011 WL 3159155, at *2 n. 2 (N.D. Ill. Jul. 26, 2011).

Northeast promptly filed this lawsuit asserting its rights under PACA after Ven-Co defaulted. Accordingly, Northeast's actions here are entirely consistent with Congressional intent that produce sellers "promptly . . . pursue . . . judicial remedies." Id. at 38. Only after filing its complaint and serving Ven-Co, did Northeast engage in settlement discussions with Ven-Co to recoup what it was owed. (Silv. Decl. in Frthr. Supp. ¶ 2)

Nothing in the statute, in American Banana, or in other case law indicates that post-litigation settlement agreements can only be pursued at the cost of sacrificing PACA trust rights. [4] Such a rule would run counter to the legislative purpose behind the PACA trust provision – i.e., to provide remedies for sellers to quickly collect money owed to them, see H.R.

---

[4] Nearly all PACA waiver cases address pre-complaint forbearance agreements. See, e.g., In re Lombardo Fruit and Produce Co., 12 F.3d 806 (8th Cir. 1993) (PACA trust protection lost where seller extended time for payment beyond 30-day maximum before seeking to enforce trust rights); Greg Orchards & Produce, Inc. v. Roncone, 180 F.3d 888, 892 (7th Cir. 1999)(PACA trust protection lost where seller entered into post-default forbearance agreement prior to filing complaint); Paris Foods Corp. v. Foresite Foods, Inc., 2007 WL 568841, at *6 (N.D.Ga. Feb. 20, 2007)(PACA "supplier must . . . be in compliance [with PACA] when it seeks to enforce [PACA trust] rights in court"); Bonell Produce Co. Inc., v. Chloe Foods, Inc., No. 08-CV-4218 (FB)(CLP), 2008 WL 4951942 (E.D.N.Y. Nov. 19, 2008) (no waiver of PACA trust rights by seller who accepted "slow" payments from buyer prior to filing preliminary injunction).

This Court is aware of only one decision in which a court has suggested that post-complaint conduct could result in waiver of PACA trust rights. In Bocchi Americas Associates, Inc., v. Commerce Fresh Marketing Inc., the court, in dicta, found that a "post-default agreement, including one that is made after an action to recover damages has been filed, destroys the PACA trust." No. H-04-02411, 2006 WL 2882721, at *8 (S.D.Tex. Oct. 6, 2006). The Bocchi court reached the question of post-complaint conduct even though that lawsuit was not initiated until "one year after the last invoice was sent," and after the seller had agreed "to allow the produce payments to continue well beyond the statutory limit of thirty days." Id. at *6. The court cited no law in support of its ruling concerning post-complaint conduct, and likewise did not explain its reasoning. Id. at *8. While the Fifth Circuit affirmed, it specifically did not reach the question of whether post-complaint forbearance could justify a finding of PACA trust rights waiver. 515 F.3d 383, 392 n.9 (5th Cir. 2008) ("because we find sufficient written evidence of an agreement [pre- complaint], we need not consider whether the [post-complaint] agreement may be considered as evidence of [seller's] willingness to agree to a payment period in excess of thirty days"). Under these circumstances, and for the reasons set forth below, this Court will not follow Bocchi.

7

REP. NO. 98-543, at 3-4 (1983), and would likewise fly in the face of the "'strong judicial policy in favor of settlements.'" McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009) (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005); In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 203 (2d Cir. 2006) ("[t]he general policy of the law is to favor settlement of litigation"); ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988, 987 (2d Cir. 1983) ("courts favor the policy of encouraging voluntary settlement of disputes"). Accepting the view that PACA trust rights could be waived by a post-complaint settlement agreement involving some period of forbearance would significantly discourage post-complaint settlements.

       The Court concludes that Northeast did not waive its PACA trust rights by agreeing, in connection with post-complaint settlement discussions, that Ven-Co would have more than thirty days to satisfy its outstanding payment obligations.

## III.    PERSONAL LIABILITY

       "An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." Coosemans, 485 F.3d at 705. Under PACA, personal liability attaches to a trustee, "whether a corporation or a controlling person of that corporation," who uses trust assets "for any purpose other than repayment of the supplier." Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F.Supp. 346, 348 (S.D.N.Y. 1993). See also "R" Best Product, Inc. v. 646 Corp., No. 00 Civ. 8536(HB), 2002 WL 31453909, at *6 (S.D.N.Y. Oct.31, 2002). "To hold [Robert and Angela Venuti], the person[s] in control of the trust assets, liable, plaintiffs need only show that 'the assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the

8

PACA liability.'"  Coosemans, 485 F.3d at 707 (quoting Golman-Hayden Co., v. Fresh Source Produce, 217 F.3d 348, 351 (5th Cir. 2000)).

Here, it is undisputed that Robert and Angela Venuti are the sole principals and officers of Ven-Co and that they were "in a position of control over the PACA trust assets." There is likewise no dispute that they dissipated those assets and that sufficient corporate assets of [Ven-Co] were not 'freely available'" to Northeast.  Coosemans, 485 F.3d at 705, 709 (citing 7 C.F.R. § 46.46).  These facts are sufficient to support a finding that Robert and Angela Venuti are personally liable for the monies owed to Northeast.

## IV.     INTEREST AND ATTORNEY'S FEES

"PACA does not provide for the award of prejudgment interest, and under federal law such an award rests on the [c]ourt's discretion."  E. Armata, Inc. v. Platinum Funding Corp., 887 F.Supp. 590, 595 (S.D.N.Y. 1995).  District courts have "'broad discretion, and will not be overturned on appeal absent an abuse of that discretion,'" to determine interest awards.  Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1071-1072 (2d Cir. 1995) (quoting Commercial Union Assurance Co. v. Milken, 17 F.3d 608, 613-14 (2d Cir. 1994), cert. denied, 513 U.S. 873 (1994).  "Courts have awarded prejudgment interest under PACA based on congressional intent to protect agricultural suppliers."  Id.   See, e.g., In re W.L. Bradley Co., Inc., 78 B.R. 92, 93-94 (Bankr.E.D.Penn. 1987) (prejudgment interest from date of default fulfills legislative purpose of PACA by discouraging slow payment); Morris Okun, 814 F.Supp. at 351 (pre-judgment interest awarded on overdue accounts based on congressional intent reflected in PACA).

"Where the parties' contracts include [interest rate] terms, they can be awarded (and are subject to the PACA trust) as sums owing in connection with perishable commodities

9

transactions under PACA." Top Banana LLC v. Dom's Wholesale & Retail Ctr., No. 04-CV-2666(GBD), 2005 WL 1149774, at *2 (S.D.N.Y. May 16, 2005) (internal quotations omitted). When the contract is between merchants, "inclusion of terms in the seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of the contract." Id. at *3. "It does not matter that . . . interest [was] not specifically discussed." Id.

In seeking an interest award, Northeast relies on the following language in its invoices: "Past due invoices shall accrue interest at the annual rate of 18%." (Cmplt., Exh. A) Northeast also notes that Ven-Co did not protest this term. Ven-Co argues that the contract rate of interest is preempted by Federal law, but cites no law in support of this proposition.

The interest provision in Northeast's invoices is a term of the contract between Northeast and Ven-Co. Top Banana LLC, 2005 WL 1149774, at *3. There is no evidence that Ven-Co ever objected to this provision, and there is likewise no evidence "that the service charge of 1.5% per month, or 18% per annum, is outside the range of trade practice." Brigiotta's Farmland Produce & Garden Center, Inc. v. Przykuta, Inc., No. 05-CV-273S, 2006 WL 3240729. at *6 (W.D.N.Y. Jul. 13, 2006); Morris Okun, 814 F.Supp. at 351 (enforcing contractual interest rate of 1.25% per month on unpaid invoices in PACA case).

Accordingly, this Court finds that Northeast is entitled to pre-judgment interest at the rate of 1.5% per month specified in its invoices.

"[C]ontractual provisions for attorney's fees are [likewise] enforceable under PACA." Brigiotta's Farmland, 2006 WL 3240729, at *6; see also Top Banana, 2005 WL 1149774, at *2 ("[w]here the parties' contracts include such terms, they can be awarded (and are subject to the PACA trust) as sums owing in connection with perishable commodities

transactions under PACA."). Accordingly, Northeast's application for attorney's fees is likewise granted.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 20). This case is referred to the assigned Magistrate Judge for an inquest concerning the appropriate amount of damages, interest, and attorney's fees.

Dated: New York, New York
September 26, 2011

SO ORDERED.

Paul G. Gardephe
United States District Judge